DOUGLASS CRANE (MIKE) KNEUBUHL, MARGARET K.
LANDRIGAN, and ALFRED JAMES PRITCHARD KNEUBUHL,
As Trustees and Beneficiaries of the Kneubuhl Trust, Plaintiffs,

v.

LILIAN ALA`I and FRANCES OPELLE, Defendants.

---

GILIAN ROBIN KNEUBUHL ROUSH, Intervenor.

High Court of American Samoa
Land and Titles Division

LT No. 22-01

October 3, 2003

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and MAMEA, Associate Judge.

Counsel: For Plaintiffs, Jeffrey Waller
 For Defendant Lilian Ala'i, David A. Vargas
 For Defendant Frances Opelle, *pro se*
 For Intervenor, *pro se*

Plaintiffs Douglass Crane (Mike) Kneubuhl ("Douglass"), Margaret K. Landrigan ("Margaret"), and Alfred James Pritchard Kneubuhl ("Alfred") brought this action to have a lease of trust land by Defendant Francis Opelle ("Francis") to Defendant Lilian Ala'I ("Lilian") declared void or voidable. Gilian Robin Kneubuhl Roush ("Gilian") intervened to challenge Douglass's standing to sue.

## UNDERLYING FACTS

On August 15, 1960, Adeline Pritchard Kneubuhl ("Adeline") transferred several parcels of her individually owned land in American Samoa in trust ("Kneubuhl Trust") to William Robert Opelle ("William"), as trustee, with her children Frances K. Opelle ("Frances"), Benjamin F. Kneubuhl, Jr. ("Benjamin"), John Alexander Kneubuhl ("John"), Douglass, Margaret, and Alfred as equal beneficiaries.[1] The Kneubuhl Trust was recorded with the Territorial Registrar on August 24, 1960. Effective on September 30, 1969, all parties to the Kneubuhl Trust agreed to partition the beneficial interests in particular trust land among the six beneficiaries ("Partition Agreement"). Specifically, the Partition Agreement 1) divided the parcel of the land "being portions of Olo, Tagaua`a, Puapua, Lesea and Aso To`elau" among the trust beneficiaries and 2) conveyed part of a portion of the trust land known as

---

[1] According to the August 15, 1960 Conveyance in Trust, the Kneubuhl Trust includes parcels of land known as: Taupou, Olo No. 3, Tagavaa, Lesea, Olo No. 1, Puapua, Olo No. 2, Aso Toelau, Poata, Taitai, Maloloa, and Satala.

273

"Malaloa" to Frances. The Partition Agreement was recorded with the Territorial Registrar, but not until July 10, 1995.

On October 31, 1974, all parties, John excluded, attempted to again modify the trust ("Modification Agreement").[2] The Agreement purported to give Frances exclusive rights to use a portion of the trust called "Malaloa" and appoint her as successor trustee over that portion. In addition, the Modification Agreement instructed William to "appoint each beneficiary as a successor trustee over that portion of the corpus of the trust called "Olo" as described in the Partition Agreement. William also was to appoint Alfred as the successor trustee for the remaining portion of the property held in trust.

Also in 1974, five of the six beneficiaries, John excluded, signed a Land Planning Agreement pertaining to contiguous parcels within the partitioned trust land known as "Olo." The Land Planning Agreement contained the following relevant provisions: 1) reserved the area for single-family homes within minimum sites of 50,000 square feet; 2) required written approval of a majority of the trustees for any development of the land; 3) required approval of a majority of the trustees for any rental of any portion of the land or improvements on the land to anyone not a trustee; and 4) limited any rental agreement to no more than a one-year term. The Land Planning Agreement has not been recorded with the Territorial Registrar.

On December 31, 1979, Frances leased to Priscilla Moors Muench ("Priscilla") and Lawrence R. Moran ("Lawrence") approximately 1.6 acres (approximately 69,600 square feet) of the "Olo" trust land partitioned to Frances for a term of 35 years, commencing upon completion of construction of a residence on the leased land or June 30, 1980, whichever occurred first. This lease agreement ("Lease Agreement") was recorded with the Territorial Registrar on March 24, 1980.

Under the Lease Agreement, Priscilla and Lawrence retained title to their improvements on the leased land. However, the Lease Agreement gave Frances the right to purchase the improvements, at depreciated value at the time of acquisition, within five years after the demise of Priscilla and Lawrence. Both Priscilla and Lawrence were deceased as of May 13, 1984.

On November 19, 1984, Frances assigned to Suhayl Ala`i ("Suhayl") her right to purchase the improvements, and on April 16, 1985, this Court

---

[2] We take judicial notice of the Modification Agreement and any other documents, which were submitted to this Court in *Kneubuhl v. Kneubuhl*, LT No. 12-80.

authorized the administrators of Lawrence's estate to sell the improvements to Suhayl. On December 11, 1986, the Lease Agreement with certain amendments was transferred to Suhayl as lessee ("Lease Transfer"). The Lease Transfer amended amended the Lease Agreement to grant Suhayl the option to renew the Lease Agreement for another term of 30 years. The improvement purchase provision was also revised to provide that Suhayl's successors become the lessees upon his death and that Frances is obligated to purchase the improvements, at fair market value, should either Suhayl's executor elect to terminate the Lease Agreement or should the Lease Agreement terminate before the lease term expires. The Lease Transfer was recorded with the Territorial Registrar on December 12, 1986.

Suhayl died in 1995. Lilian, his surviving spouse, inherited the leasehold under the Lease Agreement as an asset of the estate pursuant to the Court's distribution order. On April 25, 1997, the Lease Agreement was amended to formally substitute Lilian as the lessee ("Lease Amendment"). The Lease Amendment has not been recorded with the Territorial Registrar.

Plaintiffs seek to declare the Lease Agreement, Lease Transfer, and Lease Amendment void or voidable because they have not been approved by a majority of the trustees as required by the Land Planning Agreement.

Other facts pertaining to particular issues will be set forth in the discussion below.

## DISCUSSION

A. Standing to Sue

Gilian specifically challenges Douglass's standing to sue, while Lilian challenges the standing of all Plaintiffs to sue. Gilian argues that Douglass transferred his interest in the Olo property to the other beneficiaries as part of a 1982 settlement agreement and, therefore, has no standing to bring the instant action. Lilian argues that Plaintiffs do not have standing because they do not constitute a majority of trustees or beneficiaries.

■ It is well established that in order to establish standing a party must demonstrate the following three things:

> (1) 'injury in fact,' by which we mean an invasion of a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;' (2) a causal relationship between the injury and the challenged

conduct, by which we mean that the injury 'fairly can be traced to the challenged action of the defendant,' and has not resulted 'from the independent action of some third party not before the court; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the 'prospect of obtaining relief from the injury as a result of a favorable ruling' is not 'too speculative.' These elements are the 'irreducible minimum' required by the Constitution.

*Mulitauaopele v. Togafau*, 26 A.S.R.2d 52, 53-54 (Trial Div. 1994) (citing *Ne. Fla. Chapter of the Ass'n Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 663-64 (1993)) (internal citations omitted).

■ In this case, Plaintiffs are seeking declaratory relief, specifically that a lease be declared void or voidable. Under A.S.C.A. § 43.1101, a person is entitled to relief if he is "interested under a deed, will or other written, or under a contract, or . . . desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property." We find that Plaintiffs have standing to seek declaratory relief.

Initially, with respect to Gilian's challenge of Douglass's standing, it is important to describe the circumstances surrounding the aforementioned settlement agreement. In June 1982, in order to resolve several underlying litigations, all the trust beneficiaries executed a settlement agreement ("Settlement Agreement"), which among other things, redistributed certain interests in the Kneubuhl Trust. Specifically, Douglass transferred all of his interest in the properties known as "Satala" and "Olo" to John, Benjamin, Margaret, and Alfred in equal parts.

Gilian contends that by relinquishing his rights to Olo in the Settlement Agreement, Douglass has no standing to maintain this lawsuit. In essence, Gilian suggests that the Olo property constitutes a separate subtrust, one in which Douglass has no interest as trustee or beneficiary. Yet, none of the documentary evidence (the Kneubuhl Trust, the Partition Agreement, the Modification Agreement, the Land Planning Agreement, or the Settlement Agreement) leads us to reach this conclusion. Although some of these documents partition the interests in portions of the Kneubuhl Trust, void is any evidence of an intention to create multiple subtrusts. Notably, all of the documents refer to the trust in the singular form. *See generally* 76 AM. JUR. 2D *Trusts* § 27 (1992) (noting that "the particular words of the instrument creating such trust or trusts must be examined to determine the creator's purpose"). Absent any evidence that Adeline intended to create multiple trusts or subtrusts, we find that the Kneubuhl Trust constitutes one trust. As a beneficiary to the Kneubuhl Trust, we find that Douglass has standing to maintain

this action.

■ Lilian has challenged the standing of all of the Plaintiffs to bring the instant action. Lilian argues that there must be a majority of trustees or beneficiaries in order to bring an action regarding the trust. We disagree. As beneficiaries to the Kneubuhl Trust, Margaret, Douglass, and Alfred each have standing to protect their rights and interests.[3] *See, e.g., Mountain Top Condo. Ass'n v. Stabbert*, 72 F.3d 361, 367 (3d Cir. 1995) (noting that "beneficiaries have a property interest in the trust res that is enforceable either in law or in equity"); RESTATEMENT (SECOND) OF TRUSTS §§ 198-99 (1959).

Moreover, should Lilian's argument be based on the Land Planning Agreement, it still is untenable. The Land Planning Agreement purports to impose restrictions on the development of the Olo land and requires majority agreement for various actions. Notably absent is any requirement that a majority must agree in order to bring a legal action regarding the property. As such, we hold that Plaintiffs have standing to maintain the instant action.

B. Legal Status of the Trustees/Beneficiaries

Underlying this action is the legal status of the Knuebuhl Trust (and its trustees and beneficiaries) in light of the restrictions on the alienation of land to non-Samoans. Plaintiffs conceded that none of the current trustees or beneficiaries has 50% Samoan blood. A.S.C.A. § 37.0204(b) mandates:

> It is prohibited to alienate any lands except freehold lands to any person who has less than one-half native blood, and if a person has any nonnative blood whatever, it is prohibited to alienate any native lands to such person unless he was born in American Samoa, is a descendant of a Samoan family, lives with Samoans as a Samoan, lived in American Samoa for more than 5 years and has officially declared his intention of making American Samoa his home for life.

The validity of the restrictions on the alienation of Samoan lands has been affirmed time and time again by this Court. *See generally Craddick Dev., Inc. v. Craddick*, 2 A.S.R.3d 20 (App. Div. 1998); *Craddick v. Territorial Registrar of Am. Samoa*, 1 A.S.R.2d 10 (App. Div. 1980); *Craddick Dev. Inc. v. Craddick*, 28 A.S.R.2d 117 (Trial Div. 1995); *Haleck v. Lee*, 4 A.S.R. 519 (Trial Div. 1964). It is undisputed that the

---

[3] This seems particularly necessary in this case because the Plaintiffs and the other Kneubuhl Trust beneficiaries do not have a valid trustee to protect or assert their rights.

Kneubuhl Trust beneficiaries and trustees do not meet this requirement.

 However, the Legislature has carved out an exception to the restrictions on land alienation. Under A.S.C.A. § 37.0205, a Samoan can create a trust for the benefit of a son or daughter, "in view of legal marriage with a nonnative, or for his son or daughter already married to a nonnative, or for any of the issue of any such marriage." It was under this exception that this Court previously held the Kneubuhl Trust valid. *Kneubuhl v. Kneubuhl*, LT No. 12-80, slip op. at 5-6, 9 (Land & Titles Div. Mar. 24, 1982) (Order Granting Partial Summary Judgment). We agree with Chief Justice Miyamoto's holding that that the Kneubuhl Trust meets the statutory exception to A.S.C.A. § 37.0204(b) and find that the Kneubuhl Trust beneficiaries are allowed to hold equitable interest in the trust land as beneficiaries.

 In the previous Kneubuhl case, the Court instructed the parties that they could not be trustees to the Kneubuhl Trust. *Id.* at 3 ("Although the modification agreements attempt to transfer Opelle's interest as trustee to the settlor's children and to appoint them as successor trustees, this he could not do."). This is because the trustees hold the legal title to the trust property while the beneficiaries hold the equitable interest. *See In re Estate of Flake*, 71 P.3d 589, 594 (Utah 2003); *Coon v. City and County of Hawaii*, 47 P.3d 348, 375 (Haw. 2002); *see generally* RESTATEMENT (SECOND) OF TRUSTS § 99 cmt. b (1959). It is undisputed that the Kneubuhl Trust beneficiaries are not capable of holding legal title to land in American Samoa. However, contrary to this Court's finding in 1982 and contrary to American Samoa law, the Kneubuhl beneficiaries have continued to hold themselves out as "trustees" of the Kneubuhl Trust. This they cannot do.

 However, the Kneubuhl Trust does not fail for want of a trustee.[4] A trust does not fail merely because the trustee is "incapable of taking title to the property." *See generally* RESTATEMENT (SECOND) OF TRUSTS § 32(2) cmt. j (1959); 76 AM. JUR. 2D *Trusts* § 250 ("A trust will never fail for want of a trustee."). In order to comply with the law, William must still appoint a new trustee that is agreed upon by a majority of the

---

[4] Plaintiffs pointed out during closing argument that in *Craddick Development, Inc.*, 28 A.S.R.2d at 126, we held that two trusts were void *ab initio* for violating the statutory restrictions on land alienation. In that case, the trustee was a Samoan capable of holding legal title. However, the beneficiaries were nonnatives who did not meet any statutory exception to the alienation restrictions. Thus, unlike the instant case in which the trust does not fail for lack of a valid trustee, the *Craddick* trust was void ab initio because there was never a valid trust beneficiary. *See generally* RESTATEMENT (SECOND) OF TRUSTS § 66 (1959) ("A trust cannot be created unless there is a proper beneficiary.").

beneficiaries, and that trustee must be capable of holding legal title to land under the laws of American Samoa.

## C. Validity of the Lease Agreement and Subsequent Modifications

Douglass, Margaret and Alfred seek a declaration that the Lease Agreement, Lease Transfer, and Lease Amendment are void or voidable because they have not been approved by a majority of the trustees as purportedly required by the Land Planning Agreement.

■ Lilian asserts that Plaintiffs are barred from maintaining this action on the grounds of waiver, estoppel, and laches. While there appears to be some merit to each of these affirmative defenses, Plaintiffs have clearly waived their right to challenge the Lease Agreement, Lease Transfer, and Lease Amendment.

■ Here, Plaintiffs acquiesced when Frances leased the land to Pricillia and Lawrence and later when she transferred the lease to Suhayl and then Lilian. "Acquiescence consists of assent by words or conduct on which the other party relies." *Hazard Coal Corp. v. Ky. W. Va. Gas Co.*, 311 F.3d 733, 740 (6th Cir. 2002).

> When a party with full knowledge, or at least with sufficient notice or means of knowledge, of his rights, and of all the material facts, freely does what amounts to a recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time and knowingly permits the other party to deal with the subject matter under the belief that the transaction has been recognized or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence and the transaction, although originally impeachable, becomes unimpeachable in equity . . . .

*Id.* at 740-41 (quoting J. Pomeroy, 2 EQUITY JURISPRUDENCE § 965 (5th ed. 1941)).

Plaintiffs do not deny that they have known about these agreements for many years. The Lease Agreement was entered in 1979, the Lease Transfer in 1986, and the Lease Amendment in 1997. Two of these agreements were registered shortly after their execution with the Territorial Registrar. Moreover, paragraph thirteen of the Settlement Agreement implicitly validates the Lease Agreement by explicitly allowing Lawrence to remain at Olo *under the same conditions*. Plaintiffs, along with Frances, Benjamin and John, were all parties to the Settlement Agreement, and the Settlement Agreement was approved by

this Court. *See In re Estate of Lena Pritchard Kneubuhl*, PR No. 08-80 (Probate Div. July 16, 1982) (Stipulation and Order). This demonstrates acquiescence in, and possibly ratification, of the Lease Agreement.[5] Certainly, Frances and Lilian have relied on Plaintiffs' acquiescence in assuming the Lease Agreement, Lease Transfer, and Lease Amendment were valid instruments. Plaintiffs cannot complain now. Accordingly, we hold that Plaintiffs have waived their right to challenge the validity of the Lease Agreement, Lease Transfer and Lease Amendment.

## ORDER

1. William shall appoint a successor trustee to the Kneubuhl Trust who is capable of holding legal title to land under the laws of American Samoa and is acceptable to a majority of the beneficiaries. If William is unavailable or unwilling to perform this duty, a majority of the beneficiaries shall appoint a qualified successor trustee.

2. Plaintiffs have waived their right to challenge the validity of the Lease Agreement, Lease Transfer, and Lease Amendment. As between the parties to this action, including Frances, the Lease Agreement, Lease Transfer, and Lease Amendment remain in full force and effect.

3. There being on statutory or contractual basis, request for attorney's fees is denied. However, she is entitled to recover her other costs of suit from Plaintiffs.

4. Lilian's cross-claims are rendered moot.

It is so ordered.

---

[5] Plaintiffs insist that the minutes from a December 15, 1983 meeting demonstrate their disapproval of the Lease Transfer. However, these minutes are from a meeting that took place three years before Suhayl and Frances executed the Lease Transfer, and there is no evidence that Plaintiffs' concerns were ever expressed to Suhayl or Lilian, or that Frances ever actually received a copy of these minutes.